IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT JACKSON AND<br>MARIA JACKSON,<br>Individually, and on Behalf of All<br>Others Similarly Situated,<br><br>　　　　　　　　Plaintiffs<br><br>　　　　v.<br><br>EME HOMER CITY GENERATION L.P,<br>HOMER CITY OL1 LLC; HOMER CITY<br>OL2 LLC; HOMER CITY OL3 LLC;<br>HOMER CITY OL4 LLC; HOMER CITY<br>OL5 LLC; HOMER CITY OL6 LLC;<br>HOMER CITY OL7 LLC; HOMER CITY<br>OL8 LLC; AND;<br>NEW YORK STATE ELECTRIC AND<br>GAS CORPORATION;<br>PENNSYLVANIA ELECTRIC CO.;<br>EDISON MISSION ENERGY;<br>MISSION ENERGY HOLDING CO.;<br>AND EDISON INTERNATIONAL.<br><br>　　　　　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION _____

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiffs, Scott Jackson and Maria Jackson, individually and on behalf of all others similarly situated, by and through their undersigned attorneys, Villari, Brandes, & Kline, P.C., and for the Class Action Complaint, herein assert upon information and belief the following:

## SUMMARY OF CLAIMS

1.   Plaintiff, Scott Jackson and Maria Jackson ("Plaintiffs"), bring this Class Action on behalf of themselves and all others similarly situated as citizens, residents, home-owners and/or individuals residing or living within the Commonwealth of Pennsylvania at, near, around and/or

down wind of the Homer City coal-fired electricity generating power plant in Homer City,

Pennsylvania ("Homer City Plant"), against Defendants, EME Homer City Generation L.P.

("EME Homer City"); Homer City OL1 LLC, Homer City OL2 LLC, Homer City OL3 LLC,

Homer City OL4 LLC, Homer City OL5 LLC, Homer City OL6 LLC, Homer City OL7 LLC,

and Homer City OL8 LLC (collectively "the OLs"), New York State Electric and Gas

Corporation ("NYSEG"), Pennsylvania Electric Co. ("PENELEC"), Edison Mission Energy

("EME"), Mission Energy Holding Co. ("MEH"), and Edison International ("EI") (collectively

"Defendants"), for statutory violations and claims pursuant to, among other things, the Clean Air

Act ("CAA"), 42 U.S.C. §§7401-7671q et. seq.; Pennsylvania's Air Pollution Control Act

("APCA"), 35 P.S. §§ 4000.1-4015 et. seq; Pennsylvania's Hazardous Sites Cleanup Act

("HSCA"), 35 P.S. §§ 6020.101-6020.1305 et. seq;. and common law claims for trespass, private

nuisance, negligence, and battery.

## **PARTIES**

2.     At all times relevant herein, Plaintiffs, Scott Jackson and Maria Jackson, were and are

citizens and residents of the Commonwealth of Pennsylvania, residing at 797 Long Road, Homer

City, Indiana County, PA 15748.

3.     Defendant EME Homer City is a Pennsylvania Limited Partnership registered to do

business in Pennsylvania, with principal places of business at 18101 Von Karman Ave., Suite

1700, Irvine, CA 92612 and 1750 Power Plant Road, Homer City, PA 15748.  Defendant EME

Homer City is the current operator of the electric generating units located at the Homer City

coal-fired electricity generating power plant in Homer City, Pennsylvania (the "Homer City

Plant").  At all times relevant to this action, Defendant EME Homer City owned, operated, were

responsible for maintaining and/or were responsible for inspecting the Homer City Plant that has

and continues to generate electricity from coal fired, steam generating boilers.

4.    The Defendant OLs are the current owners of the Homer City Plant, having acquired the plant through a sale-lease back transaction with EME Homer City in 2001.  The Defendant OLs are Delaware Limited Liability Companies and are registered to do business in Pennsylvania, with a registered agent address as: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, New Castle, Delaware 19801.  At all times relevant to this action, Defendant OLs owned, operated, were responsible for maintaining and/or were responsible for inspecting the Homer City Plant.

5.    Defendant NYSEG is a New York Corporation and is registered to do business in Pennsylvania, with a principal place of business at 89 East Avenue, Rochester, NY 14649.  At all times relevant to this action, NYSEG owned, operated, were responsible for maintaining and/or were responsible for inspecting the Homer City Plant.

6.    Defendant PENELEC is a Pennsylvania corporation and is registered to do business in Pennsylvania.  Its principal place of business is 1001 Broad Street, Johnstown, PA 15907.  At all times relevant to this action, PENELEC owned, operated, were responsible for maintaining and/or were responsible for inspecting the Homer City Plant.

7.    Defendants Edison Mission Energy ("EME"), Mission Energy Holding Co. ("MEH"), and Edison International ("EI"), are corporate entities, with their principal place of business located at: 2244 Walnut Grove Avenue, in the City of Rosemead, California, 91770, and upon information and belief, are parent companies or corporate entities that have a substantial and continuing relationship with Defendant EME Homer City, and at all times relevant to this action, collectively owned, operated, were responsible for maintaining and/or were responsible for inspecting the Homer City Plant.

## JURISDICTION AND VENUE

8.    This Honorable Court has jurisdiction over the subject matter of this Act pursuant to the Clean Air Act ("CAA"), 42 U.S.C. §§7401-7671q et. seq., and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.  The Court also has pendant jurisdiction of any claims under state law.

9.    Venue is proper in the Western District of Pennsylvania, pursuant to the Clean Air Act ("CAA"), Sections 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), (c), and 1395(a), because EME Homer City is located in this District and has its principal place of business in this District, the violations have occurred and are occurring in this District, and the plant at issue is located in this District.

## CLASS ACTION ALLEGATIONS

10.    Plaintiffs bring this action, and each of the claims therein, on their own behalf and on behalf of all others similarly situated, as members of the proposed Class (the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, which Class and "Class Area" are defined as follows:

(a)    All individuals who own, live in and/or reside in homes and/or real property in Pennsylvania within a yet unknown radius around, near, at, within the air dispersion area for the Homer City Plant's smoke stack emissions and/or down wind from, the Homer City Plant and who, as a result of Defendants' smokestack emissions, related particulates, and/or other releases, have had their real property affected, impacted and/or harmed by the deposit of and/or exposure to toxic, harmful and/or other materials into their environment and/or onto their properties.

(b)    All individuals who own, owned, live in, lived in and/or reside/resided in homes and/or real property in Pennsylvania within a yet unknown radius around, near, at, within the air dispersion area for the Homer City Plant's smoke stack emissions and/or down wind from, the Homer City Plant and who, as a result of Defendants' smokestack emissions, related particulates,

and/or other releases, have potentially had their health negatively impacted by the deposit of and/or exposure to toxic, harmful and/or other materials into their environment, onto their properties and/or onto or into their persons.

Specifically excluded from the aforementioned classes are the Defendants and their agents and employees, the judge and court employees hearing or involved in the case, real property owned by any Defendant, and any public or governmental entity.

### Numerosity and Impracticability of Joinder

11.   The violations of federal and state environmental laws, wrongful acts and conduct by Defendants as alleged herein, have harmed and continue to harm persons throughout the Class Area. The members of the Class are so numerous that joinder of all members is impracticable.

12.   The exact numbers of the Class Members is presently unknown as such information is in the exclusive control of Defendants, however, due to the nature of the services and commerce involved, Plaintiffs believe the class consists of thousands of Pennsylvania residents, home-owners, and individuals.

### Commonality and Predominance

13.   Common questions of law and fact affect the rights of each Class Member, which predominate over any questions affecting only individual members of the Class, and there exists a common relief by way of damages sought for the Plaintiff Class Members.

14.   The harm that Defendants have caused or could cause is substantially uniform with respect to Class Members.  Common questions of law and fact that affect the Class Members include but are not limited to the following:

a.      Whether Defendants deliberately, willfully, intentionally, recklessly and/or negligently, failed to install, utilize, and/or employ the best available pollution control

technology regarding the Homer City Plant, thereby causing unlawful emissions and releases into the environment and thus harm to Plaintiffs and/or their property;

  b.   Whether Defendants deliberately, willfully, intentionally, recklessly and/or negligently, implemented major modifications to the Home City Plant, at or around 1994, that violated relevant federal and state environmental regulatory laws and permitting requirements, including but not limited to the Clean Air Act ("CAA"), 42 U.S.C. §§7401-7671q et. seq;

  c.   Whether Defendants deliberately, willfully, intentionally, recklessly and/or negligently, implemented major modifications to the Home City Plant, at or around 1994, that violated relevant state laws including but not limited to, Pennsylvania's Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. §§ 6020.101-6020.1305 et.. seq; Pennsylvania's Air Pollution Control Act ("APCA"), 35 P.S. §§ 4000.1-4015 et. seq.

  d.   Whether Defendants' conduct constitutes trespass;

  e.   Whether Defendants' conduct constitutes private nuisance;

  f.   Whether Defendants' conduct constitutes negligence;

  g.   Whether Defendants' conduct constitutes battery;

  h.   Whether Defendants' conduct resulted in economic harm and/or other presently unknown damages to Plaintiffs and the members of the Class, and therefore Plaintiffs and members of the Class are entitled to relief; and

  i.   Whether Defendants' conduct is of such a nature as to entitle Plaintiffs to punitive damages (in addition to compensatory damages), and, if so, in what amount.

15. There are other common questions of law and fact that exist in and among the Plaintiffs' Class, such as Defendants' liability to Plaintiffs under the legal theories set forth herein; Defendants' liability for diminution of class members' real property values; the need for

injunctive relief to halt the continuing harmful and adverse emissions; the need for a Health

Assessment and possibly medical monitoring; and, factual issues concerning the plant's design,

maintenance, inspection, repair and/or operation, all of which predominate over any questions

solely affecting individual members of the aforesaid classes.

### Typicality

16.   The representative Plaintiffs' claims are typical of the claims of the Class, because Plaintiffs

and all Class Members have suffered harms as a result of the violations by Defendants of federal

and state environmental regulatory laws and common law.

17.   Plaintiffs' claims arise from the same practice and course of conduct that give rise to the

claims of Class Members, and are based upon the same or similar legal theories.

### Adequacy of Representation

18.   Plaintiffs as the Representative Class Plaintiffs, will fairly and adequately assert and protect

the interests of the Class, and have retained class counsel who are experienced and qualified in

prosecuting class actions, including environmental matters and other forms of complex litigation.

Neither Plaintiffs nor their Attorneys have interests which are contrary to or conflicting with

those of the Class.

### Superiority

19.   Plaintiffs' claims arise from the same practice and course of conduct that give rise to the

claims of Class Members, and are based upon the same legal theories.

20.   A class action provides a fair and efficient method for the adjudication of the controversy

for the following reasons:

     a.     The common questions of law and fact set forth above predominate over

    any questions affecting only individual class members;

b.      The Class is so numerous as to make joinder impossible, economically unfeasible, and procedurally impracticable;

c.      Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants and unduly burden the court system;

d.      Individual damages incurred by each Class member, resulting from Defendants' wrongful conduct may be too small to warrant the expense of individual suits;

e.      Plaintiffs do not know of any difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.      Defendants have acted and/or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or declaratory relief with regard to the members of the Class as a whole.

## GENERAL FACTUAL ALLEGATIONS

21.   At all times relevant to this action, Defendants set forth herein, owned, operated, maintained, modified, supervised, regulated, and otherwise oversaw the Homer City Plant.

22.   The Homer City Plant includes three coal-fired generating units, Homer City Unit 1, Homer City Unit 2, and Homer City Unit 3.

23.   At all times relevant to this action, the Homer City Plant, including Units 1-3, were each a "major emitting facility" and a "major stationary source" within the meaning of the Clean Air Act ("CAA"), 42 U.S.C. §§7401-7671q et. seq., and other relevant federal and state environmental laws.

24.   Beginning in or about January 1968 until in or about March of 1999, Defendant PENELEC was an owner of the Homer City Plant.

25.   Beginning in or about January 1968 until in or about June of 1998, Defendant NYSEG was an owner of the Homer City Plant.

26.   On August 3, 1995, Defendant PENELEC submitted a Title V application for the Homer City Plant.

27.   On or about March 1999, Defendant EME Homer City became the operator of the Homer City Plant and continues to operate the plant.  From March 1999 until on or about December 7, 2001, Defendant EME Homer City also owned the Homer City Plant.

28.   On or about December 7, 2001, Defendant EME Homer City completed a sales-leaseback transaction that transferred ownership of the Homer City plant to the OLs.  The OLs remain the current owners of the plant.

29.   The Homer City Unit 1 began operating in 1969.  On or about March 1994, Defendants NYSEG and PENELEC commenced construction of one or more "major modifications" on Home City Unit 1, which included one or more physical change or change in the method of operation at Homer City Unit 1, including but not limited to: a)  a project to replace the economizer on Unit 1; b) modification of the backpass ductwork to accommodate the new economizer; and c) the installation of the new reheat temperature control dampers and internal boiler supports and related work.

30.   Defendants, contrary to federal and state regulatory and environmental laws, failed to insure such major modifications complied, adhered, followed, and met relevant federal and state permitting requirements, and or insure that such modifications utilized, incorporated, or were consistent with clean air, pollution, and air technology.

31.   Defendants collectively, failed to comply with federal and state environmental regulations with respect to the major modifications at Homer City Unit 1, wherein, Defendants: a) undertook such major modifications and/or operated Homer City Unit 1, without obtaining federal and state mandated permits for the construction and operation of the modified unit; b) failed to undergo the necessary federal and state mandated assessments, testing, and determinations in connection with the major modification; c) failed to implement, install, utilize, and otherwise employ, the federal and state mandated SO2 controls; d) failed to operate the plant in compliance with federal and state emission limitations; and e) continued to operate without meeting additional federal and state regulatory standards, requirements, as required by the Clean Air Act ("CAA"), 42 U.S.C. §§7401-7671q et. seq. and other federal and state regulations.

32.   Defendants have violated and continue to violate Section 165(a) of the Clean Air Act ("CAA"), 42 U.S.C,. § 7475(a), in the operation of the Homer City Plant, and various other federal and state related environmental regulations, causing undue environmental exposure and other adverse harm to Plaintiffs.

33.   As set forth herein, Defendants commenced construction, installed, maintained, supervised, and operated the Homer City Plant, and therefore, had a duty pursuant to federal and state regulations, to undergo specific assessments, testing, and assessments, including a BACT determination, to insure that the plant was operating in compliance with applicable emission limitations.

34.   As set forth herein, Defendants deliberately, willfully, intentionally, recklessly and/or negligently, failed to satisfy said federal and state regulatory requirements, therefore, posing a significant environmental health risk to the public at large, and causing undue environmental exposure and adverse health harm to Plaintiffs.

35.   Furthermore, Defendants failed to duly submit a complete application for a Title V operating permit for Homer City Unit 1, wherein such permit identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements, including the requirement to meet the BACT assessment and determination requirements.

36.   As set forth herein, Defendants deliberately, willfully, intentionally, recklessly and/or negligently, failed to satisfy said federal and state regulatory requirements pertaining to a Title V operating permit, therefore, posing a significant environmental health risk to the public at large, and causing undue environmental exposure and adverse health harm to Plaintiffs.

37.   Additionally, Defendants have failed to obtain a proper or adequate Title V operating permit for the Homer City Plant, including but not limited to Unit 1 that contains emissions limitations for SO2 and other regulated emissions.  Defendants thereafter have operated the Homer City Plant without meeting such emissions limitations, and without having an adequate operating permit that requires compliance with such limitations or that contains a compliance plan for all applicable requirements for which the source is not in compliance.

38.   As a result of Defendants' violations, including federal and state environmental regulations, the United States Environmental Protection Agency and the Department of Justice, filed on January 6, 2011, a civil suit against Defendants, United States v. EME Homer City Generation L.P., et. al., Case No. 11-cv-19 (TFM), for violations of Sections 502 (a), 503(c), and 504(a) of the Clean Air Act, 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), and the Title V operating permit regulations including 40 C.F.R §§ 70.5-0.6 and 25 Pa. Code §§ 127.411-127.412, 127.414, 126.441, 127.502-127.503, 127.505, 127.511-127.512 and 127.542.

39.   As set forth in such Complaint, as a result of Defendants' operation of the Homer City Plant, including the illegal, unlawful, and illicit "modifications, and the absence of appropriate controls, significant amounts of SO2 and/or PM pollution each year have been, and continue to be, released into the air …these pollutants harm public harm and the environment, contributing to premature mortality, asthma attacks, acid rain, and other adverse effects in downwind communities and natural areas …<u>the SO2 pollution alone from the Homer City Plant is approximately 100,000 tons each year, making it one of the largest air pollution sources in the nation</u>" (emphasis added).

40.   Accordingly, the United States government has sought against Defendants, a permanent injunction, including a Court order compelling Defendants to apply for permits in conformity with the requirements of Title V and federal and state regulations, and that Defendants "take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act."

## **CLAIMS FOR RELIEF**

## **COUNT I. – STATUTORY CLAIMS**

41.   Paragraphs 1 through 39, above, are incorporated herein by reference, as if fully set forth.

42.   The Clean Air Act ("CAA"), 42 U.S.C. §§7401-7671q et. seq, is designed to protect and enhance the quality of the nation's air, so as to promote the public health and welfare of the citizens.  <u>See</u> 42 U.S.C. § 7401(b)(1).

43.   Additionally, the Commonwealth of Pennsylvania has implemented other environmental regulations, statutes, and laws, regarding the emission of hazardous materials, particulates, and substances, into the air.  <u>See</u> Pennsylvania's Air Pollution Control Act ("APCA"), 35 P.S. §§ 4000.1-4015 et. seq

44. Defendants, as corporate entities and as relevant "persons" within the meaning of the Clean Air Act, Section 302(e), 42 U.S.C. § 7602(e), had a legal duty, obligation, and were required to comply with relevant federal and state regulations concerning emissions, particulates, and releases from the Homer City Plant, including relevant permitting, modification, assessment, testing, health analysis, and other ambient and clean air related requirements and regulations.

45. Defendants violated applicable and relevant federal and state environmental regulatory standards, by: a) undertaking such major modifications and/or operated Homer City Unit 1, without obtaining federal and state mandated permits for the construction and operation of the modified unit; b) failing to undergo the necessary federal and state mandated assessments, testing, and determinations in connection with the major modification; c) failing to implement, install, utilize, and otherwise employ, the federal and state mandated SO2 controls; d) failing to operate the plant in compliance with federal and state emission limitations; and e) continuing to operate without meeting additional federal and state regulatory standards, requirements, as required by the Clean Air Act ("CAA"), 42 U.S.C. §§7401-7671q et. seq. and other federal and state regulations.

46. Defendants' conduct and environmental violations subjects them to an Order to pay for the aforesaid response costs, past and future, and for the relief requested by Plaintiffs herein.

## COUNT II. - VIOLATION OF THE HAZARDOUS SITES CLEANUP ACT

47. Paragraphs 1 through 45, above, are incorporated herein by reference, as if fully set forth.

48. Defendants are all "persons" within the scope and meaning of Section 103, 35 P.S. §6020.103, of the Hazardous Sites Cleanup Act (hereinafter "HSCA").

49.     Defendants generated a "hazardous substance" including, but not limited to, arsenic in and by the aforesaid emissions, discharges, and releases, within the meaning and scope of Section 103, 35 P.S. §6020.103.

50.     Defendants are liable under Section 701 and section 507 of the HSCA as a responsible person who generated hazardous substances including, but not limited to, arsenic, which substances were released or deposited in, on or around Plaintiffs' and proposed class members' real property and/or in the described areas around the Plant, who caused a release, or threat of release of, hazardous substances, 35 P.S. §6020.701, 35 P.S. §6020.507.

51.     Defendants are liable under Section 507 and Section 1101 of the HSCA as one who caused and is causing a public nuisance by its generation and deposit of hazardous substances into and onto the soil of the Plaintiffs' properties, and into the ambient air, this in violation of all of the aforesaid provisions of the HSCA.

52.     As a direct and proximate result of the release and/or threat of release of hazardous substances and/or the creation of a public nuisance, Plaintiffs have and will incur response costs pursuant to Sections 702 and 1101.

53.     Response costs must include a Health Assessment Fund that will afford medical examinations for Plaintiffs and all class members who were exposed to the hazardous substances contained in the aforesaid smokestack releases.  The purpose of such an assessment is to determine if the Plaintiffs and other proposed class members have actually suffered adverse health consequences from the aforesaid smokestack emissions and to assure that any adverse health consequences are caught as early as possible and mitigated via medical monitoring and/or medical treatment of same.

54.     Defendants' conduct and environmental violations subjects them to an Order to pay for the aforesaid response costs, past and future, and for the relief requested by Plaintiffs herein.

## COUNT III. – TRESPASS

55.     Plaintiffs incorporate herein Paragraphs 1 through 53 of their Complaint as if set forth in full.

56.     Defendants, individually and/or through their agents, servants and/or employees, knowingly, intentionally, willfully, recklessly and/or negligently caused a wrongful physical entry onto, and contamination of, Plaintiffs' real property by depositing, allowing and/or causing the deposit thereon of toxic and hazardous substances from the Homer City Plant.

57.      The aforesaid hazardous and toxic substances continue to contaminate Plaintiffs' real property and the surrounding surface and subsurface areas thereof.

58.     Said deposits and contamination is illegal, unauthorized and unreasonable and without any consent or acquiescence of the Plaintiffs.

59.     Defendants had and continue to have a duty not to permit or allow such hazardous and toxic substances to invade or deposit on real property of Plaintiffs and proposed class members within the Class Area, which duty Defendants breached and continue to breach.

60.     As a direct and proximate cause of Defendants' aforesaid acts of trespass, Defendants have caused actual and substantial damage to Plaintiffs' and proposed class members' exclusive possession of their real property and has unreasonably interfered with their use and enjoyment of their real property, all to their severe economic and non-economic detriment and injury. Defendants are therefore liable for the cost to abate the aforementioned trespass, for all damages arising from same, including compensatory and punitive damages and should be subject to the aforesaid injunctive relief to halt the continuing trespass and remove any remaining air pollution

waste.

61.     Defendants' conduct and environmental violations subject them to an Order to pay for the aforesaid response costs, past and future, and for the relief requested by Plaintiffs herein.

## COUNT IV. - COMMON LAW PRIVATE NUISANCE

62.     Plaintiffs incorporate herein Paragraphs 1 through 60 of their Complaint as if set forth in full.

63.     Plaintiffs, as owners of real estate located in the Class Area have a right to the quiet use and enjoyment of their real property, as well as the right to travel to, use and gather in public places immediately surrounding their real property and the Plant.

64.     Defendants, as set forth in the preceding paragraphs, has created and has maintained a continuing nuisance to Plaintiffs and others similarly situated by way of the aforementioned toxic, harmful, adverse and hazardous smokestack emissions, particulates, and releases.

65.      Defendants knew and/or should have known that the deposit of the aforesaid dangerous and harmful air pollution waste products onto the Plaintiffs' and others' real property, into their environment, and onto other property in the Class Area was substantially certain to result from their aforesaid actions and omissions, including causing significant diminution of value to Plaintiffs' property.

66.     Defendants, as a result of depositing, allowing and/or causing the deposit of the aforesaid dangerous and harmful air pollution waste products onto Plaintiffs and others' property as described herein, and failure to fully and adequately, remediate such deposits, has caused an unwarranted, substantial and unreasonable and unlawful use of their property as toxic dump sites and has substantially interfered with their reasonable and safe use, development, and enjoyment of their real property.

67.     As a direct and proximate result of Defendants' creation and perpetuation of the aforesaid private nuisance, Plaintiffs and the proposed class members have suffered a diminution in the value of their real property, as well as other direct and consequential economic damages.

68.     As a direct and proximate result of Defendants' intentional, willful, wanton, substantial and unreasonable interference with Plaintiff's and proposed class members' reasonable and safe use and enjoyment of their real property, Defendants are liable for the cost to abate and remediate the aforementioned nuisance, for all damages arising from said nuisance, including compensatory and punitive damages, and should be subjected to the aforesaid injunctive relief requiring an immediate cessation of the said nuisance.

69.     Defendants' conduct and environmental violations subjects them to an Order to pay for the aforesaid response costs, past and future, and for the relief requested by Plaintiffs herein.

## COUNT V. – NEGLIGENCE

70.     Plaintiffs incorporate herein Paragraphs 1 through 68 of their Complaint, as if set forth in full.

71.     Defendants owe a duty of reasonable care to Plaintiffs, the public, and the proposed class members, because Defendants are the owner and/or generator of harmful and adverse emissions, particulates, and releases, and the herein described toxic and hazardous substances from their combustion of coal to produce and sell energy for profit.  Thus Defendants owe a duty not to release, emit or expose real and personal property or persons – including the members of the Class -- to the aforesaid toxic and hazardous substances, and/or to permit same to infiltrate and emit into and or contaminate the environment and communities.

72.     Defendants breached the aforesaid duty by, among other things, designing, operating, inspecting and/or maintaining the Homer City Plant and pollution systems control in substandard

and/or unlawful fashion; by improperly operating, modifying, maintaining and/or repairing its

pollution control equipment; by improperly dispersing the aforesaid hazardous and toxic waste

materials into the environment and air; by failing to promptly, prudently and effectively

remediate the aforesaid  air pollution to prevent exposure to Plaintiffs and the proposed class

members;  by failing to adequately and effectively warn Plaintiffs and the proposed class

members about the danger of said air pollution; and by Defendants' aforesaid violations of

applicable laws, regulations, consent agreements, and/or orders of the DEP and EPA.

73.     Defendants knew or reasonably should have known that their conduct violated State and

Federal air pollution laws and the Pennsylvania Hazardous Sites Cleanup Act and other State and

Federal Environmental Laws, and that as a result of its aforesaid negligence, carelessness, gross

negligence, willful or wanton conduct and/or recklessness, the aforesaid hazardous and toxic

substances would cause damage to the Plaintiffs' and proposed class members' real and personal

property and cause them repeated personal exposure to dangerous and toxic materials.

74.     Moreover, Defendants' aforesaid acts and omissions were committed intentionally or

with such gross negligence as to establish a wanton or reckless disregard for the rights, safety

and health of Plaintiffs and all those similarly situated.

75.     At all relevant times, Defendants failed and refused, and continue to refuse to properly

design,  inspect, repair and make safe and compliant, the Plant, particularly its pollution control

devices and equipment and, thereby, have acted negligently, grossly negligently, recklessly,

carelessly and in violation of its reasonable obligations to safeguard those owning and residing in

the Class Area.

76.     As a direct and proximate result its aforesaid negligence and outrageous conduct,

Defendants are liable to Plaintiffs and the proposed class members for the requested

compensatory and punitive damages, as well as the requested injunctive relief to stop the continuing harmful emissions, particulates, and releases from the Homer City plant.

WHEREFORE, Plaintiffs, respectfully requests this Honorable Court to:

(a)     Certify this action as a class action with Plaintiffs as the representatives of the herein or subsequently described class(es) and to appoint Plaintiffs' undersigned counsel as counsel for the Class;

(b)     Issue an Order that Defendants must cease and desist from operating its Plant unless and until it can operate same in a safe, responsible, prudent and proper manner so as to prevent continuation of the aforesaid chronic, harmful, and illicit emissions, particulates, and releases, that has harmed, and in the future will harm Plaintiffs' real and personal property and their environment and persons;

(c)     Issue an Order requiring Defendants to fund a Health Assessment Study, as authorized by HSCA, that is sufficient to assess and determine any adverse health effects resulting from Plaintiffs' and proposed class members' exposure to Defendants' aforesaid smokestack emissions, particulates, and releases, and other harmful materials through all relevant exposure pathways, such as inhalation and direct contact;

(d)     Issue an Order requiring Defendants to fund medical monitoring of Plaintiffs and the proposed class members in the event the aforesaid Health Assessment Study establishes that they have suffered physical injury, disease or illness from exposure to the aforesaid smokestack emissions, particulates, and releases, and/or are reasonably likely to in the future;

(e)     Award all compensatory damages suffered by Plaintiffs and the proposed members of the classes, in an amount that fairly compensates them for their aforesaid damages and losses, together with interest, attorney fees and costs;

(f)     Award punitive damages to Plaintiffs and to the members of the proposed classes;

(g)     Award response costs, pursuant to HSCA, to compensate Plaintiffs and the proposed class members for environmental studies and health risk studies, as well as to compensate them for any future response costs, including whatever additional remediation is needed to their property to return them to a pre-contamination condition;

(h)     Allow Plaintiffs' environmental engineering experts to immediately inspect the Plant;

(i)     Appoint an independent environmental consultant to inspect the plant, issue a report on its deficiencies, and to assure that the appropriate corrections are instituted to safeguard the Plaintiffs and proposed class members from the aforesaid harmful emissions, particulates, and releases, and waste deposition caused by said Plant;

(j)     Award Plaintiffs and the proposed class members costs and reasonable attorney fees to their attorneys; and,

(k)     Award Plaintiffs and the proposed class members such other and further relief as the Court deems just and equitable under the circumstances.

Respectfully submitted,

VILLARI, BRANDES & KLINE, P.C.

BY:___/s/ Peter M. Villari
         Peter M. Villari, Esquire
         Paul D. Brandes, Esquire
         Attorney I.D. # 26875, 59769
         161 Washington Street,
         8 Tower Bridge, Suite 400
         Conshohocken, PA  19428
         Tele:  610-729-2900
         Fax:  610-729-2910
         *Attys. for Plaintiffs*

**Dated: January 7, 2011**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues herein.

VILLARI, BRANDES & KLINE, P.C.

BY: /s/ Peter M. Villari
Peter M. Villari, Esquire
Paul D. Brandes, Esquire
Attorney I.D. # 26875, 59769
161 Washington Street,
8 Tower Bridge, Suite 400
Conshohocken, PA  19428
Tele:  610-729-2900
Fax:  610-729-2910
*Attys. for Plaintiffs*

**Dated: January 7, 2011**